[Cite as *State v. Tango*, 2015-Ohio-5133.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102208**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**ANTHONY J. TANGO**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-584094-A

**BEFORE:** Laster Mays, J., Celebrezze, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 10, 2015

-i-

**ATTORNEY FOR APPELLANT**

Edward M. Heindel
450 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy McGinty
Cuyahoga County Prosecutor

By: Eric L. Foster
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} On October 20, 2014, defendant-appellant Anthony J. Tango ("Tango") was found guilty of one count of improperly discharging a firearm into a habitation, in violation of R.C. 2923.161(A)(1), a felony of the second degree. This count contained both one- and three-year firearm specifications in accordance with R.C. 2941.141 and 2941.145(A). Tango was also found guilty of one count of using weapons while intoxicated, in violation of R.C. 2923.15(A), a misdemeanor of the first degree. The firearm specifications were merged and the trial court sentenced him to a total of five years. Three years on the firearm specification was ordered to be served consecutive to two years on Count 1. The trial court sentenced Tango to 180 days in jail on the second count to be served concurrently. The court imposed three years of mandatory postrelease control and restitution in the amount of $402.33. Tango appeals the trial court's decision.

{¶2} After review of the record, we agree with the trial court's decision and affirm. Tango assigns five errors for our review.

> I. The conviction for improperly discharging a firearm into a habitation was against the manifest weight of the evidence, and not supported by sufficient evidence because the state failed to prove that Tango acted knowingly.
>
> II. The trial court erred when it sentenced Tango on both improperly discharging a firearm into a habitation and using weapons while intoxicated as they were allied offenses of similar import.
>
> III. Tango's conviction for improperly discharging a firearm into a habitation and a three-year gun specification violated Tango's state and federal constitutional protections against double jeopardy and were allied offenses.
>
> IV. The trial court erred when it did not properly require Tango to execute a jury waiver in open court.

V. Tango was denied his right to the effective assistance of counsel as guaranteed to him by Art. 1, Sec. 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

## I. Facts and Procedural Posture

{¶3} After consuming alcohol for most of the day, Tango located his new gun and fired it into the wall of his home. He fired twelve rounds; eight of those rounds went through his wall into the house next door. The neighbor was laying on his couch when he heard the first shot fired. The second shot went through his bathroom and hit the shower curtain, knocking it off the rail. The neighbor then ran to his daughter's room, where he saw two bullet holes in the wall above her head and pieces of drywall on her face. He then retrieved both of his children and ran into the basement where he heard more gunshots. He called the police who arrived within five minutes. Once the police arrived, they found bullets in the neighbor's kitchen, hallway, bathroom, and bedrooms.

{¶4} After a brief investigation, the police observed that the bullets came from Tango's home. They went next door and knocked, asking if there was anyone in the home. When no one answered, they entered Tango's house and searched. They found Tango hiding in a cubbyhole behind the chimney. In addition, they located the .40 caliber Smith & Wesson gun and a box of ammunition. They also found a bottle of alcohol in Tango's bedroom. During his testimony, Tango stated that while he did shoot the gun, he was shooting towards the backyard, not towards any houses. He also claimed that he did not remember the incident and had blacked out.

{¶5} The trial court disagreed and found Tango guilty on both counts and both specifications. As a result Tango filed this timely appeal.

## II. Sufficiency and Manifest Weight of Evidence

### A. Standard of Review

**{¶6}** When an appellate court reviews a claim of insufficient evidence, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

**{¶7}** In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Leonard* at 68.

**{¶8}** "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence

sustains the issue that is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. *Black's Law Dictionary* 1433 (6th Ed.1990).

**{¶9}** "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

**B.      Analysis**

**{¶10}** In his first assignment of error, Tango argues that the conviction for improperly discharging a firearm into a habitation was against the manifest weight of the evidence and not supported by sufficient evidence because the state failed to prove the requisite culpable mental state of "knowingly."     Tango was charged with and convicted of violating R.C. 2921.161(A)(1), "no person, without privilege to do so, shall knowingly do any of the following: discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual."

**{¶11}** Tango contends that he could not have knowingly discharged his firearm because he was severely inebriated.   R.C. 2901.22(B) states:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶12}** We disagree with Tango's contention.   After firing his gun at least eight times in his home, when the Cleveland police arrived Tango hid in the chimney cubbyhole.   Tango was aware that his conduct was probably of a certain nature that he removed himself from the action.

Tango testified that he thought he was shooting towards the backyard, not another home. He knew that he was intoxicated and he voluntarily shot his gun. The statute states that "no person, * * *shall knowingly do any of the following: discharge a firearm at or into an occupied structure* * *." The fact that the bullets traveled into the neighbor's home is inconsequential to the conclusion. We find that Tango knowingly discharged the firearm and that the trial court's judgment was not against the manifest weight of the evidence and was supported by sufficient evidence. Appellant's first assignment of error is overruled.

## III. Allied Offenses

### A. Standard of Review

{¶13} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court recently clarified the test a trial court and a reviewing court must employ in determining whether offenses are allied offenses that merge into a single conviction, stating:

> When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B). A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses (1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm; (2) the offenses were committed separately; and (3) the offenses were committed with separate animus or motivation. At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense.

We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Id*. at ¶ 24-26. *State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 57.

### B. Analysis

**{¶14}** In his second assignment of error, Tango argues that his conviction for improperly discharging a firearm into a habitation and using weapons while intoxicated were allied offenses of similar import.

**{¶15}** In order to determine whether offenses should merge as the same offense, it must first be determined if each offense caused separate or identifiable harm, were committed separately, or were committed with separate animus or motivation. Tango was charged with violating R.C. 2923.161(A)(1) and R.C. 2923.15(A). R.C. 2923.15(A) states that "no person, while under the influence of alcohol or any drug of abuse, shall carry or use any firearm or dangerous ordnance." Whereas, R.C. 2923.161(A)(1) states that "no person, without privilege to do so, shall knowingly do any of the following: discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual." While Tango was under the influence of alcohol, he carried his firearm. This offense is separate from discharging the firearm because it occurred at a different time. He had been drinking all day and was intoxicated. Once he picked up the weapon while intoxicated, he committed the first offense. Tango's argument of "use" does not make it an allied offense. When he decided to fire the gun into the wall, he committed the second offense. Therefore, the trial court's judgment not to merge the two offenses is affirmed. Tango's second assignment of error is overruled.

## IV. Double Jeopardy

{¶16} The Double Jeopardy Clause provides that no person shall be placed in jeopardy twice for the same offense. The double jeopardy protections afforded by the federal and state constitutions guard citizens against cumulative punishments for the "same offense." *State v. Jackson*, 8th Dist. Cuyahoga No. 86506, 2006-Ohio-3165.

{¶17} In his third assignment of error, Tango claims that the court should not have sentenced Tango on both the firearm specification and discharging a firearm into a habitation because it violated his protection against double jeopardy. However, the Ohio State Supreme Court has already ruled on this issue when it stated in *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, that:

> R.C. 2941.25 requires the merger of two or more allied offenses of similar import. However, the criminal offense of discharging a firearm at or into a habitation under R.C. 2923.161 and a firearm specification as defined in R.C. 2941.145 are not allied offenses of similar import as defined in R.C. 2941.25, because a firearm specification is a penalty enhancement, not a criminal offense. Penalties for a specification and its predicate offense do not merge under R.C. 2941.25. Consequently, the sentences for discharging a firearm at or into a habitation and for the firearm specification are not merged.

Thus, the trial court's decision to sentence Tango on both the firearm specification and discharging a firearm into a habitation is affirmed. Tango's third assignment of error is overruled.

## V. Jury Waiver

### A. Standard of Review

{¶18} In a criminal case where the defendant elects to waive the right to trial by jury, R.C. 2945.05 mandates that the waiver must be in writing, signed by the defendant, filed in the criminal action, and made part of the record thereof. Absent strict compliance with the

requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury. *State v. Pless*, 74 Ohio St.3d 333, 658 N.E.2d 766 (1996). The failure to comply with R.C. 2945.05 may be remedied only in a direct appeal from a criminal conviction. *State v. Coleman*, 8th Dist. Cuyahoga No. 69202, 1996 Ohio App. LEXIS 1876 (May 9, 1996).

### B.    Analysis

**{¶19}** In his fourth assignment of error, Tango argues that because his jury waiver was not signed in open court, it is invalid. R.C. 2945.05 states,

> In all criminal cases pending in courts of record in Ohio, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury." Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

The judge asked Tango, in open court, if he wanted to waive his right to a jury trial. Tango answered in the affirmative. However, Tango's argument is that because he did not *sign* the jury waiver in open court, it was not part of the record, and therefore invalid. However, Tango is misreading the statute. The statute states that a jury waiver be in writing, signed by the defendant, and must be made in open court. After discussing the matter with his counsel, Tango signed the jury waiver and his counsel presented it to the court.

| The Court: | Okay. We're here today set for a trial. It's my understanding that Mr. Talty and his client are reviewing a jury waiver, is that correct, Mr. Talty? |
|---|---|
| Mr. Talty: | Yes, your Honor. We have gone over the jury waiver and it has been executed. |

| | |
|---|---|
| The Court: | Would you present that to me, please? Thank you. Now, Mr. Tango, you have the right to a jury trial. I know your attorney has explained that to you. But I want to make sure that you understand that and it's on the record. |

{¶20} The court then continued with a full explanation of the jury process. The Court then stated:

| | |
|---|---|
| The Court: | You have the right to have that process apply to you, but by executing this document after consulting with your attorney, you have agreed to waive a jury * * *. Is that your understanding? Is that your wish? |
| The Defendant: | Yes, your Honor. |

{¶21} Tango while in open court stated his intentions to waive a jury trial. After a verbal exchange with the court, Tango's jury waiver was made a part of the record. The waiver was in writing, signed by the defendant, filed, and made a part of the record. Defendant's fourth assignment of error that his jury waiver was invalid is overruled.

## VI.    Ineffective Assistance of Counsel

### A.    Standard of Review

{¶22} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland* at 688. Judicial scrutiny of defense counsel's performance must be highly deferential. *Id*. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999).

{¶23} Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgement. *State v. Bell*, 8th Dist. Cuyahoga No. 102141, 2015-Ohio-4178, citing *State v. Bradley*, 142 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*

### B.      Analysis

{¶24} In his fifth and final assignment of error, Tango argues that he was denied his right to the effective assistance of counsel when his trial attorney advanced a theory that offered no defense under existing law, tried the case in court, and essentially admitted Tango's guilt. To prevail on this claim, Tango must show that (1) his counsel's performance was deficient, i.e. fell below an objective standard of reasonable representation, and (2) the deficient performance prejudiced the defense so as to deprive Tango of a fair trial. To establish prejudice, Tango must show that there is a reasonable probability that, were it not for counsel's errors, the result of the proceeding would have been different. *Sutton,* 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 18. Failure to establish either element is fatal to the claim. Therefore, if one element is dispositive, a court need not analyze both. *Id.* Tango argues that because his counsel argued that he was too inebriated to understand that his actions were criminal, and that Tango thought he was shooting towards the backyard, counsel was ineffective. Even assuming counsel was ineffective for advancing this theory, this is the story that Tango told his trial counsel and testified to in court. The police investigation showed that Tango did fire numerous rounds from his gun inside of his house into the neighbor's house, and he was under the influence of alcohol. His counsel could not state a defense that was not true. He simply told the court the same information Tango told him. Therefore, counsel's performance was not deficient, and his performance did not deprive Tango of a fair trial. We overrule Tango's claims of ineffective assistance of counsel.

{¶25} Therefore, the trial court's decision is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, JUDGE

FRANK D. CELEBREZZE, JR., A.J., and
EILEEN T. GALLAGHER, J., CONCUR IN
JUDGMENT ONLY